Stanley ASHARE, as Custodian for Elizabeth Ashare and Carolyn Ashare, Plaintiff,

v.

Daniel H. BRILL, Joseph S. Dimartino, Virginia A. Dwyer, Martin D. Fife, Whitney I. Gerard, Dr. Jonas E. Salk, Howard Stein, The Dreyfus Corporation, and Dreyfus Liquid Assets, Inc., Defendants.

No. 81 Civ. 7094 (JES).

United States District Court, S.D. New York.

March 17, 1983.

Pincus, Ohrenstein, Bizar, D'Alessandro & Solomon, New York City, for plaintiff.

Stroock & Stroock & Lavan, New York City, for defendants Daniel H. Brill, Virgin-

ia A. Dwyer, Martin D. Fife, Whitney I. Gerard, Dr. Jonas E. Salk, and Dreyfus Liquid Assets, Inc.; Laurence Greenwald, Bruce H. Schneider, New York City, of counsel.

Rogers & Wells, New York City, for defendants The Dreyfus Corp., Joseph S. Di-Martino and Howard Stein; William P. Rogers, Stanley Godofsky, P.C., James N. Benedict, New York City, of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff, a shareholder of Dreyfus Liquid Assets, Inc. (the "Fund"),[1] commenced this shareholder derivative action against the Fund,[2] its directors, and the Fund's investment adviser, Dreyfus Corporation (the "Adviser"), alleging that management fees paid by the Fund to the Adviser since November 16, 1980,[3] were, are and will be excessive and unreasonable and that receipt of such excessive compensation constitutes a breach of defendants' fiduciary duty to the Fund in violation of section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a–35(b) (1976) (the "Act"). Complaint ¶'s 12, 15.

Defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 12(b)(6) and 56(b) contending that the instant action is barred by principles of *res judicata* in that it constitutes a collateral attack upon a judgment approving a settlement of four earlier derivative actions.[4] The four prior actions sought both damages for excessive fees paid to the Adviser between 1975 and 1977 and injunctive relief to prevent any future breaches of fiduciary duty. The actions were settled pursuant to an agreement between the parties which provided, *inter alia,* for a method of fixing the Adviser's future fees in accordance with a sliding scale fee schedule based on the level of the Fund's average daily net assets[5] ("Settlement Agreement"). Exhibit M to Stipulated Statement of Facts.

The Settlement Agreement, which by its terms required shareholder approval as a condition to its effectuation, Exhibit F to Stipulated Statement of Facts, was to remain in force until 1986, *Id.* and was approved by the Court on July 13, 1981, *Krasner v. Dreyfus Corp.,* 90 F.R.D. 665 (S.D.N.Y.1981) (Cannella, J.). Thereafter, the shareholders received notice of the settlement[6] and the Court's approval thereof.

1. The Fund is a no-load money market fund registered with the Securities and Exchange Commission as a diversified, open-end investment company under the Investment Company Act of 1940, 11 U.S.C. §§ 72, 107, 15 U.S.C. §§ 80a–1—80a–52 (1976). Stipulated Statement of Facts at 1.

2. The Fund is required to be named as a nominal defendant. *Meyer v. Fleming,* 327 U.S. 161, 167, 66 S.Ct. 382, 386, 90 L.Ed. 595 (1946).

3. Plaintiff's action was commenced on November 16, 1981. Section 36(b)(3) of the Act, 15 U.S.C. § 80a–35(b)(3) (1976), limits damages to those incurred no earlier than one year prior to the institution of the action under § 36(b).

4. *Krasner v. Dreyfus Corp.,* 76 Civ. 1478 (JMC), *Gross v. Dreyfus Corp.,* 76 Civ. 4010 (JMC), *Untermeyer v. Dreyfus Liquid Assets, Inc.,* 76 Civ. 184 (JMC), and *Untermeyer v. Dreyfus Liquid Assets, Inc.,* 78 Civ. 5636 (JMC).

5. The sliding fee scale provides for compensation for the Adviser in the following amounts:

| Ave. Daily Net Assets | Rate of Fee |
|---|---|
| First $1.5 billion | 0.50% |
| Between $1.5 and $2 billion | 0.48% |
| Between $2 and $2.5 billion | 0.47% |
| Over $2.5 billion | 0.45% |

Stipulated Statement of Facts at 5.

6. Plaintiff alleges that the notice to shareholders, Exhibit G to Stipulated Statement of Facts, was misleading in that it did not specifically set forth *in haec verba* the fact that the sliding scale fee schedule was to be effective until 1986. However, a reading of the notice as a whole makes it abundantly clear that the fee schedule approved by the Court was to run through 1986. First, the notice itself provides that the fee schedule would apply "to 1979 *and any later year.*" (emphasis added) Exhibit G to Stipulated Statement of Facts. Secondly, all the other provisions of the amended settlement, as set forth in the notice to shareholders, are expressly effective to 1986. Moreover, the proxy statement received by the shareholders, Exhibit L to Stipulated Statement of Facts, states that the reduction in the Adviser's fee resulting from the sliding scale fee schedule would result in savings to the Fund "for a

After an opportunity to lodge objections to the Court's approval of the settlement,[7] the shareholders overwhelmingly approved the Settlement Agreement on October 14, 1981.

While plaintiff does not dispute the fact that the Settlement Agreement fixes the Adviser's fees through 1986, he contends that the receipt of such fees constitutes a breach of fiduciary duty because the Fund's assets have increased substantially in recent years[8] without a parallel increase in the Adviser's costs in rendering the service. Complaint ¶¶ 12, 14. Plaintiff argues that, since the prior actions did not allege that excessive advisory fees were paid in 1980 and thereafter, the claims now raised are not barred by principles of *res judicata*. Plaintiff further contends that, even though the Court considered the impact of future increases in the level of the Fund's assets in approving the sliding scale fee schedule through 1986, he is not thereby precluded from bringing suit since a claim for breach of fiduciary duty may not be barred from *de novo* review on the basis of a prior settlement. This contention lacks merit.

In *Lerner v. Reserve Management Co.,* [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,036 (S.D.N.Y.1981), this Court considered a similar motion for summary judgment. In that case, three shareholder derivative actions, which alleged that investment advisors had been receiving excessive compensation by reason of "mushrooming growth" in fund assets, were settled. The settlement was approved by the Court and subsequently embodied in a judgment. *Id.* at 91,367. The settlement agreement, which incorporated a sliding fee scale quite similar to that in the instant case, was to be in effect for five years. *Id.* During the effective period of the settlement, the *Lerner* action was commenced. *Id.* The *Lerner* plaintiffs, like plaintiff in the instant action, alleged that the management fees, which were being paid in accordance with the settlement agreement, were excessive. *Id.* Judge Griesa observed that "a continuation of the economic pattern" existing at the time of the earlier actions had raised fund assets and fees to levels higher than at the time those actions were settled.[9] *Id.* at 91,368. Nevertheless, he found that, "this [was] not a sufficient reason to allow the settlement . . . to be overturned by a new action." *Id.* Pointing out that the parties to the earlier actions had bargained for the five-year agreement, and that the court had

ten-year period commencing with 1977." *Id.* at 5–6. In any event, even assuming that there were an ambiguity in the notice as to the duration of the sliding scale arrangement, no reasonably prudent shareholder could have been led to believe that the fee schedule would cease to be effective before 1986, since by its terms, it applies to "any later year." Therefore the ambiguity, if indeed one existed, could only have caused a reasonable shareholder to believe that that schedule was effective for years subsequent to 1986. It follows that the alleged ambiguity could only have afforded more, rather than less, motivation to oppose the Settlement Agreement, and that the decision of reasonable shareholders to approve the Settlement Agreement could not have been impacted by the alleged failure to inform them *in haec verba* that it only applied through 1986.

Plaintiff also contends that the proxy materials, which set forth the sliding scale fee, were defective in that they materially omitted to state that, in letters exchanged between opposing counsel during the pendency of the earlier actions, Exhibit I to Stipulated Statement of Facts, the Adviser had stated its intention to argue, in answer to any subsequent claim of excessive management fees, that the Amended

Settlement 'necessarily had some *res judicata* effect'. This omission was clearly not material. The shareholders knew that the fee schedule was to be in effect until 1986 and therefore had every basis to believe that claims for those future years were being compromised and settled, and that the settling defendant would take the legal position that claims of excessive fees for these years would be barred.

7. No shareholder objections were made to the Court's approval of the settlement during the period set aside for that purpose.

8. The Fund's assets have indeed grown markedly. They have exceeded $1.5 billion since August 10, 1979. By August of 1980, they exceeded $3.0 billion. By July of 1981, they had grown to $6.0 billion. By November 4, 1981, assets were $8.1 billion. By March 10, 1982, they had reached $9.6 billion.

9. Between the time of settlement and the time of Judge Griesa's decision, the assets of the funds in *Lerner* grew from $190 million to $1.7 billion. *Lerner* at 91,368.

approved it, *id.*, Judge Griesa held that the subsequent action sought "to impair or destroy rights and interests established by the judgment" entered in the earlier actions. *Id.* Accordingly, he dismissed the subsequent action.

While plaintiff admits that the *Lerner* decision is on point he urges the Court to reject it as wrongly decided since it applied a contract analysis in concluding that the settlement of the prior cases barred the action in issue. Plaintiff's Memorandum at 28. This Court finds Judge Griesa's reasoning persuasive. The parties bargained at arms-length for the Settlement Agreement, which was carefully reviewed by Judge Cannella who specifically considered the possibility that the Fund's assets would increase in the future. *Krasner v. Dreyfus Corp.*, 500 F.Supp. 36 (S.D.N.Y.1980) (Cannella, J.); see Fed.R.Civ.P. 23.1.[10] Indeed, it was for this very reason that he called for a further evidentiary showing of the fairness and reasonableness of future compensation levels. *Id.* at 44. After reviewing all the evidence, Judge Cannella concluded that the Settlement Agreement was fair, reasonable and adequate. 90 F.R.D. at 673.

The cases relied upon by plaintiff are inapposite. None holds that a claim for breach of fiduciary duty may not be barred from *de novo* review on the basis of a prior settlement agreement.[11] The Court therefore concludes that plaintiff's claims for breach of fiduciary duty are barred and must be dismissed.

**10.** Rule 23.1 provides in pertinent part that shareholder derivative action "shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs." Fed.R.Civ.P. 23.1.

**11.** Plaintiff relies on *Lawlor v. National Screen Service,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 122 (1955), which held that plaintiff's claims for violations of the antitrust laws were not barred by a settlement reached in a prior antitrust action because (1) the subsequent suit was not based on the same cause of action; and (2) the new defendants were not privies of the parties to the earlier action, and could not therefore claim the benefit of that agreement. *Lawlor* is

Defendants' motion for summary judgment is granted.

SO ORDERED.

clearly distinguishable. The settlement agreement in that case did not purport to compromise or settle claims for future breaches of the antitrust laws. Here it is abundantly clear that the parties did intend to settle future claims arising out of the same factual and legal contentions that are set forth in the present complaint, as is evidenced by Judge Cannella's specific factual finding that the sliding fee scale would be fair and reasonable through 1986. Moreover, plaintiff's complaint alleges a breach of fiduciary duty owed by the adviser to the Fund, on whose behalf plaintiff has brought this action. Unlike the situation in *Lawlor,* the Fund was a party to the Settlement Agreement which plaintiff seeks to attack.